UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

SAMUEL CHRISTOPHER-NEA DAVIS,

        Petitioner,

v.

THOMAS WINN,

        Respondent.

Case No. 1:17-cv-621

Honorable Robert J. Jonker

_____/

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Christopher Samuel Nea-Davis is incarcerated with the Michigan Department of Corrections at the Lakeland Correctional Facility (LCF) in Coldwater, Michigan. On January 16, 2015, Petitioner entered a plea of *nolo contendere*[1] in the St. Joseph County Circuit Court to two counts of armed robbery, Mich. Comp. Laws § 750.529. On March 26, 2015, the court sentenced Petitioner to concurrent terms of imprisonment of 16 years to 60 years.

Petitioner, with the assistance of counsel, filed an application for leave to appeal his sentences to the Michigan Court of Appeals raising just one issue:

---

[1] In Michigan, a plea of *nolo contendere* has essentially the same effect on the criminal prosecution as does a plea of guilty:

> Since a plea of *nolo contendere* indicates that a defendant does not wish to contest his factual guilt, any claims or defenses which relate to the issue of factual guilt are waived by such a plea. Claims or defenses that challenge a state's capacity or ability to prove defendant's factual guilt become irrelevant upon, and are subsumed by, a plea of *nolo contendere*. Hence, we hold that a plea of *nolo contendere* has the same effect upon a defendant's ability to raise an issue on appeal as does a plea of guilty. Only those defenses which challenge the very authority of the state to prosecute a defendant may be raised on appeal after entry of a plea of *nolo contendere*.

*People v. New*, 398 N.W.2d 358, 363 (Mich. 1986) (footnotes omitted). Thus, a plea of *nolo contendere* waives a claim that the evidence of guilt is insufficient in the same way that a plea of guilty does. *See Post v. Bradshaw*, 621 F.3d 406, 426-27 (6th Cir. 2010); *United States v. Freed*, 688 F.2d 24, 25-26 (6th Cir. 1982).

I. IS MR. DAVIS ENTITLED TO A RESENTENCING BASED UPON THE THRESHOLD SHOWING THAT: HIS OV LEVEL WAS CALCULATED USING FACTS BEYOND THOSE FOUND BY THE JURY OR ADMITTED BY HIM; THE REDUCTION IN HIS OV SCORE TO ACCOUNT FOR THE ERROR WOULD CHANGE THE APPLICABLE GUIDELINES MINIMUM SENTENCE RANGE; AND HE WAS NOT SENTENCED TO AN UPWARD DEPARTURE SENTENCE.

(Br. in Supp. of Appl. for Leave to Appeal, ECF No. 1-1, PageID.19.) By order entered November 23, 2015, the court of appeals denied Petitioner's application for lack of merit in the grounds presented. (Mich. Ct. App. Ord., ECF No. 8-5, PageID.183.)[2]

Petitioner filed an application for leave to appeal in the Michigan Supreme Court. (Pet., ECF No. 1, PageID.2.) Petitioner again raised the single issue from his court of appeals brief and he added several others, paraphrased as follows:

II. Denial of counsel-ineffective assistance of counsel (plus . . . ineffective assistance of appeal counsel). Defense counsel did not meet with Petitioner. Defense counsel was suspended from the practice of law during his representation of Petitioner. Defense counsel advised Petitioner to plead guilty.

III. Investigations of the courts, judge, prosecution, attorney, police reports and appeal attorneys.

IV. Prosecutorial misconduct & maliciousness.

V. Bias & prejudice of courts.

VI. Rules of Professional Conduct were violated.

VII. Illegal transcripts. (Petitioner claims the court made things up and picked and chose what to distribute out in the open and what to cover up).

---

[2] One member of the three-judge Michigan Court of Appeals panel opined that she would remand Petitioner's case to the trial court for resentencing, if necessary, under the remand directive set forth in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015).

(Appl. for Leave to Appeal, ECF No. 8-6, PageID.236-301.) By order entered June 28, 2016, the Michigan Supreme Court denied leave to appeal. Petitioner did not file a petition for certiorari in the United States Supreme Court. (Pet., ECF No. 1, PageID.2.)

On July 7, 2017, Petitioner filed his habeas corpus petition.[3] Although he identifies three, or perhaps four, separate habeas grounds, they together simply reiterate the single ground for relief that Petitioner raised in the Michigan Court of Appeals. (Pet. ECF No. 1, PageID.6-10.)

On April 13, 2018, Petitioner filed a motion to stay this action and hold it in abeyance pending his exhaustion of additional issues in the state courts. (Mot., ECF No. 11.) Petitioner now contends that his plea was involuntary and unknowing because his counsel failed to inform him of the full ramifications of the plea. He also claims that counsel failed to object at sentencing when the trial court added an additional armed robbery count that should have been dismissed under the plea agreement.

Respondent has filed an answer to the petition (ECF No. 7) stating that the grounds should be denied because they are noncognizable and without merit. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless. Accordingly, the petition will be denied. Moreover, Petitioner has failed to demonstrate good cause for his failure to previously raise his new issues and those issues, too, are without merit. Therefore, Petitioner's motion to stay will be denied.

---

[3] Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner placed his petition in the prison mailing system on July 7, 2017. (Pet., ECF No. 1, PageID.14.)

## Discussion

### I. Factual allegations

The underlying facts are not critical to the resolution of the issue raised by Petitioner; however, some background is helpful. St. Joseph County Circuit Court Judge Paul Stutesman described the facts as follows:

> This is the fourth of four cases that I've had where pleas have been entered. And the basic facts contained in the police report are that police received a 9-1-1 dispatch call on September 22nd 2014, from Hilda Welton and Kenneth Welton who were at the Saint Joseph County fairgrounds where they operated a trailer where they sold merchandise at the fair, indicating that they had just been robbed by four people who had weapons; that they had pistols pointed at them; and they described the people; and it's contained in the police report.
>
> Mr. Howe–Robert Howe, Mr. Corderrius Cook, and Mr. John Gregory have all entered pleas at this point where they established factual [bases] for their involvement and Mr. Davis's involvement in the events on that day.
>
> The four had traveled from Ohio. They had arrived earlier in the day–the day before, at least; that they then obtained outfits with FBI logos, dark clothing.
>
> That they approached the trailer; that one of the gentlemen went in first, and then there's indications that all four went in.
>
> That there were pistols held to the Weltons and that their–they were robbed of over $20,000 in cash from their safe.
>
> That after leaving the Weltons–the Weltons were zip-tied and bound in the trailer and that they left.
>
> They were able to free themselves and phone the police and sheriff's deputies or state–a sheriff's deputy, I think received and saw a vehicle with four gentlemen inside; made a stop on the vehicle, and all four gentlemen were inside.
>
> Inside the vehicle were weapons and cash and various items which would tie the occupants to the events that occurred at the fairground on September 22nd.
>
> That Mr. Gregory then agreed to cooperate with the police and made statements implicating both himself, Mr. Cook, Mr. Howe, and Mr. Davis, indicating that it

had been planned and that they had arrived from Ohio and that they had gone on that date with the intent to commit the armed robbery and did so.

(Plea Tr., ECF No. 8-3, PageID.166-167.)[4]

At the plea hearing, although he entered a plea of *nolo contendere*, Petitioner attempted to present mitigating facts to the judge. Petitioner claimed that he had not possessed a firearm. (*Id.*, PageID.162-163.) At sentencing, the court reviewed Petitioner's admitted role in the offense as reported by the presentence investigator:

> The defendant admits that he knew and participated in the planning of the crime but denies actually being present during the robbery. He claims he had second thoughts and got out of the vehicle prior to arriving at the crime scene and was later picked up by the codefendants.

(Sentencing Hr'g Tr., ECF No. 8-4, PageID.178.) Although Petitioner's version might have reduced his offense variable score under the guidelines, it would still support a guilty verdict as an aider and abettor. More importantly, Petitioner's version was not particularly convincing. The other three perpetrators had already entered pleas of guilty and implicated Petitioner as an active participant at the crime scene[5] and the victims identified four robbers, not three as Petitioner claims.

At the sentencing hearing, Petitioner was apparently suffering from pleader's remorse. He claimed that he did not possess a firearm and that he did not commit the robbery.

---

[4] Because Petitioner entered a plea of *nolo contendere*, there were no admissions at the plea hearing upon which the court could base the required finding that the plea was accurate. Mich. Ct. R. 6.302(A) and (D)(1). To support the determination that a *nolo contendere* plea is accurate, the court must hold a hearing to establish support for a finding that the defendant is guilty of the offense to which he is entering a plea. Mich. Ct. R. 6.302(D)(2)(b). In Petitioner's case, the court, the prosecutor, and the defense agreed to forego the hearing and permit the court to establish support for a finding that Petitioner was guilty from the police report. (Plea Hr'g Tr., ECF No. 8-3, PageID.165-168.)

[5] John Earl Gregory entered a plea of guilty to one count of armed robbery on November 17, 2014. (J. of Sentence, ECF No. 8-5, PageID.229.) Robert William Howe entered a plea of guilty to one count of armed robbery on December 3, 2014. (J. of Sentence, ECF No. 8-5, PageID.226.) George Corderrius Cook entered his plea of guilty to one count of armed robbery on December 3, 2014, as well. (J. of Sentence, ECF No. 8-5, PageID.223.) Petitioner was offered the same opportunity to enter a plea of guilty to one count of armed robbery on December 3, 2014. (Status Conf. Tr., ECF No. 8-2, PageID151-154.) He was told the offer would no longer be available if he did not accept it that day. (*Id.*) He declined. (*Id.*, PageID.154.)

(*Id.*, PageID.180.) The trial court explained that the time to challenge the factual support for the charges had passed. (*Id.*)

Petitioner's remorse has also apparently colored his recollection of the plea negotiation and hearing. He now claims that he never agreed to enter pleas with respect to two counts of armed robbery. The plea transcript indicates otherwise:

> THE COURT: Okay. So, if I heard the prosecutor correctly, the offer in the case is to plead to count one and two, charges of armed robbery, which carry a potential sentence of up to life or any term of years.
>
> Count three, home invasion, will be dismissed.
>
> Count four, unlawful imprisonment, would be dismissed.
>
> Count five, unlawful imprisonment, would be dismissed.
>
> Count six, larceny of $20,000 or more would be dismissed.
>
> Count seven the felony firearm, which is a two-year mandatory minimum consecutive to and preceding any other case, would be dismissed.
>
> And the habitual criminal third offense notice would also be dropped.
>
> In addition, the prosecutor agreed to recommend that your minimum sentence not exceed 16 years.
>
> Now is that your understanding, Mr. Grubbs?
>
> MR. GRUBBS: Yes, your Honor, it is.
>
> THE COURT: And, Mr. Davis, is that your understanding?
>
> THE DEFENDANT: Yes, your Honor.

(Plea Tr., ECF No. 8-3, PageID.158-159.)

Similarly, Petitioner's complaint that he was not informed of the ramifications of his plea is belied by the transcript. Petitioner asked: "With me taking a 16-year plea, does that mean that I have from zero to 16 years that I could do up to; or does that mean I have to take a

solid 16 years . . . ?" (*Id*., PageID.161.) The court explained that 16 years "would be on the minimum, not on the maximum." (*Id*., PageID.162.) The court explained further that it would also set a maximum:

> THE COURT: But, when I set the minimum, that's the minimum that is to be served; and then you would become eligible for release from the Michigan Department of Corrections through a parole.
>
> THE DEFENDANT: Okay.
>
> THE COURT: If you don't achieve parole, then whatever I set at the top end, you have to be let out at. Okay? Do you understand that?
>
> THE DEFENDANT: Yes, your Honor.

(*Id*.)

The court also identified the rights Petitioner would be giving up by availing himself of the plea agreement. Petitioner signed the Advice of Rights form indicating he would be giving up his rights: to be tried by a jury; to be presumed innocent until proved guilty; to have the prosecutor prove beyond a reasonable doubt that he was guilty; to have the witnesses against him appear at trial; to question the witnesses against him; to have the court order any witnesses for the defense to appear at the trial; to remain silent during the trial; to not have that silence used against him; and, to testify at the trial if he wanted to testify. (Advice of Rights Form, ECF No. 8-5, PageID.218.)

## II. AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to,

or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*,

8

135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. The use of judge-found facts at sentencing

Petitioner argues that the trial court judge violated his Sixth Amendment right to a trial by jury and his Fourteenth Amendment right to due process, by using, to enhance his sentence, facts that had not been admitted by Petitioner or found by a jury beyond a reasonable doubt. Petitioner bases his argument on the line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and including *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013).

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence. Justice Souter has since described the holding in *Apprendi* as follows:

9

> We held that exposing a defendant to an increased penalty beyond the range for a basic crime, based on facts determined exclusively by a judge, violated the Sixth Amendment, *in the absence of a jury waiver*; a defendant could not be subjected to a penalty more serious than one authorized by the facts found by the jury or admitted by the defendant.

*Rita v. United States*, 551 U.S. 338, 387 (2007) (J. Souter dissenting) (emphasis added).[6]

In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme, under which the maximum penalty could be increased by judicial fact-finding. The *Blakely* Court held that the state guideline scheme violated the Sixth and Fourteenth Amendments, and reiterated the rule that any fact that increased the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt." *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303). The *Blakely* Court recognized, however, that "nothing prevents a defendant from waiving his *Apprendi* rights." *Blakely*, 542 U.S. at 310. In responding to Justice Breyer's dissent, the majority explained "that the Sixth Amendment was not written for the benefit of those who choose to forgo its protection." *Id*. at 312.

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court determined its conclusion with regard to the state sentencing guideline scheme in *Blakely* would also apply to the federal sentencing guidelines. One group of five Justices concluded that mandatory federal sentencing guidelines ran afoul of the Sixth Amendment. Another group of five Justices determined the appropriate remedy was to make the guidelines discretionary. Leaders of both groups recognized the ability of a defendant to waive the Sixth Amendment right. "[I]t is axiomatic that a defendant may waive his Sixth Amendment right to trial by jury." *Booker*, 543 U.S. at 276-77 (Stevens, J. dissenting in part as to remedy); (Justice Breyer for the remedial

---

[6] It is noteworthy that Apprendi, like Petitioner, entered a plea. Apprendi, however, expressly reserved the right to challenge the sentence enhancing factor. The Michigan Court Rules also permit the entry of a conditional plea that has the effect of preserving an issue or issues for appeal despite the plea. Mich. Ct. R. 6.301(C)(2). In Petitioner's case, however, his plea was not conditional.

10

majority acknowledging the Sixth Amendment is not implicated in plea bargaining). *Booker*, 543 U.S. at 248.

Subsequently, in *Alleyne v. United States*, 570 U.S. 99 (2013), the Supreme Court held that the *Blakely* line of cases applies equally to statutory mandatory minimum sentences. Shortly thereafter, the Michigan Court of Appeals concluded that *Alleyne* did not prohibit judicial factfinding in scoring the Michigan sentencing guidelines that generated the minimum range under Michigan's indeterminate sentencing regime. *See People v. Herron*, 845 N.W.2d 533, 539 (Mich. App. 2013).[7] The Sixth Circuit similarly concluded that *Alleyne* did not invalidate Michigan's indeterminate sentencing scheme. *See Kittka v. Franks*, 539 F. App'x 668, 673 (6th Cir. 2013). As a consequence, the Sixth Circuit held there is no clearly established Supreme Court precedent on the issue. *Id.* (citing *Montes v. Trombley*, 599 F.3d 490, 498 (6th Cir. 2010)); *see also Saccoccia v. Farley*, 573 F. App'x 483, 485 6th Cir. 2014) ("But *Alleyne* held only that 'facts that increase a mandatory *statutory* minimum [are] part of the substantive offense.'. . . It said nothing about guidelines sentencing factors . . . .") (quoting *Alleyne*, 133 S. Ct. at 2161 (emphasis added)).

However, in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), in a 5-2 decision, the Michigan Supreme Court held to the contrary. The court reasoned that, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range," they increase the "mandatory minimum" sentence within the meaning of *Alleyne*. *Lockridge*, 870 N.W.2d at 506 (emphasis in original). As a consequence, the *Lockridge* court held that the mandatory application of Michigan's sentencing guidelines was unconstitutional. The Court's remedy, consistent with *Booker*, was to make the guidelines advisory only. *Id.* at 520-21.

---

[7] Under Michigan's system, only the minimum term is affected by the guideline determination. The maximum term is always the maximum punishment permitted by statute.

11

The Michigan Supreme Court made its holding in *Lockridge* applicable to cases still "pending on direct review." *Id*. at 523. Petitioner's case was still pending on direct review at the time the *Lockridge* court reached its decision. Accordingly, *Lockridge* applies. The fact that *Lockridge* applies to Petitioner's case, however, does not mean that Petitioner is entitled to relief.

The *Lockridge* court identified a limited group of defendants that might demonstrate the potential for plain error sufficient to warrant a remand to the trial court: "defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure . . . ." *Id*. at 522 (footnote omitted). If a remand is appropriate, the trial court, on remand, must determine if it "would have imposed a materially different sentence but for the unconstitutional restraint . . . ." *Id*. at 524.

Here, Petitioner cannot demonstrate that his minimum sentence was constrained by a violation of the Sixth Amendment, for two reasons. First, Petitioner waived his Sixth Amendment rights. *Blakely*, 542 U.S. at 310 ("[N]othing prevents a defendant from waiving his *Apprendi* rights."); *United States v. Ramirez*, 528 F. App'x 678, 679 (7th Cir. 2013) ("Counsel recognizes, however, that by pleading guilty Ramirez waived his right to have a jury, rather than the district judge, determine the drug quantity."); *United States v. Lefebvre*, 189 F. App'x 767, 774 (10th Cir. 2006) ("In this case, Mr. LeFebvre waived his right to a jury trial without qualification, thereby precluding him from challenging his sentence on grounds the district court committed constitutional *Booker* error by not affording him a jury determination on facts relevant to sentencing.").

Second, Petitioner's minimum sentence was derived from the parties' *Killebrew* agreement. Petitioner specifically asked that the court impose the recommended sentence.

(Sentencing Hr'g Tr., ECF No. 8-4, PageID.175) ("[PETITIONER]: And I'm just asking that you not sentence me by the guidelines and that you sentence me not to exceed 16 years . . . ."). As Petitioner requested, the court specifically imposed the 16-year minimum sentence pursuant to the plea agreement. (Sentencing Hr'g Tr., ECF No. 8-4, PageID.174.) ("THE COURT: The guideline range would call for a minimum sentence of anywhere from 171 to 285 months on the minimum. The plea agreement contemplates a sentence within that guideline range, so I won't interfere with the plea agreement.") The sentence agreement "'obviates the scoring of the sentencing guidelines[.]'" *People v. Dunbar*, No. 333510, 2017 WL 5759754, at *4 (Mich. Ct. App. Nov. 28, 2017) ("*Lockridge* does not apply to defendant's sentences because defendant was sentenced pursuant to a plea agreement, rather than the sentencing guidelines . . . ."); *see also United States v. Cieslowski*, 410 F3d 353, 364 (7th Cir. 2005) (concluding that a *Booker* challenge was not available because the sentence imposed under a plea agreement "arises directly from the agreement itself" and not from the sentencing guidelines) *cited in People v. Velez*, No. 315209, 2015 WL 5945364, at *4 (Mich. Ct. App., Oct. 13, 2015) (P.J. Boonstra concurring) ("[B]ecause defendant agreed to a sentence within the guidelines range, the sentence imposed by the trial court 'arose directly from the plea agreement and was not based on any facts found only by the trial court.'"); *People v. Banks*, No. 326795, 2016 WL 3946207, at *2 (Mich. Ct. App., July 21, 2016); *People v. Faher*, No. 328285, 2016 WL 6127902. at *4 (Mich. Ct. App. Oct. 18, 2016) ("[W]hen a sentencing court imposes a sentence pursuant to the terms of a plea agreement bargained for and accepted by the defendant, the sentence is not affected by the court's perception of the mandatory or advisory nature of the sentencing guidelines; thus the constitutional concerns underpinning *Lockridge* and *Alleyne* are not implicated.").[8] Therefore, even it Petitioner had not waived his

---

[8] The Michigan courts have relied on the waiver that follows from accepting a specific sentence in other contexts as well. *See, e.g., People v. Wiley*, 693 N.W.2d 800 (Mich. 2005) (where defendant agreed to a minimum sentence of

13

right to a jury trial, he waived his objection to the court's scoring of the guidelines by agreeing that a specific sentence of 16 years was acceptable, without reference to the guidelines.

## IV. Petitioner is not entitled to a stay

Petitioner has filed a motion to stay these proceedings and hold them in abeyance so that he might return to the state courts to exhaust a new claim, a claim that Petitioner asserts he only recently discovered. (Mot. for Stay, ECF No. 11, PageID.343.) The "stay and abeyance" relief requested by Petitioner was authorized by the Supreme Court in *Rhines v. Weber*, 544 U.S. 269 (2005), but "only in limited circumstances." *Id.*, at 277. Under *Rhines,* a district court may, in its discretion, stay the mixed petition pending prompt exhaustion of state remedies if there is "good cause" for the petitioner's failure to exhaust, if the petitioner's unexhausted claims are not "plainly meritless" and if there is no indication that the petitioner engaged in "intentionally dilatory litigation tactics." *Rhines*. at 278. Because Petitioner's new claims are plainly meritless, the Court will deny his motion.

Petitioner's new claims are centered on his counsel's alleged ineffectiveness during the plea negotiation process and at the plea hearing. Petitioner claims his plea was neither voluntary nor knowing because his counsel was ineffective. It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Among claims not barred are those that challenge "the very power of the State to bring the defendant into court to answer the charge against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974), and those that

---

38 years, but guidelines range was 15 to 25 years, the court held "a defendant waives appellate review of a sentence that exceeds the guidelines by understandingly and voluntarily entering into a plea agreement to accept that specific sentence."); *People v. Cobbs*, 505 N.W.2d 208, 213 (Mich. 1993) ("[W]e caution that a defendant who pleads guilty or nolo contendere with knowledge of the sentence, and who later seeks appellate sentence relief under *People v. Milbourn*, 435 Mich. 630, 461 N.W.2d 1 (1990), must expect to be denied relief on the ground that the plea demonstrates the defendant's agreement that the sentence is proportionate to the offense and offender.").

14

challenge the validity of the guilty plea itself. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Haring v. Prosise*, 462 U.S. 306, 320 (1983); *Tollett*, 411 U.S. at 267. A plea not voluntarily and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969). Petitioner's claim does not challenge the power of the state to bring him into court. Thus, the only means available for challenging his conviction is to claim that his plea is invalid, i.e., it was not knowingly and voluntarily entered into. *See Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.").

The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it[.]" *Brady v. United States*, 397 U.S. 742, 749 (1970).

In order to find a constitutionally valid guilty plea, several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also

15

understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). Finally, the defendant must have available the advice of competent counsel. *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel). Ineffective assistance of counsel at the plea stage will render a plea of guilty involuntary. *See Hill*, 474 U.S. at 56-57.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id*. at 691.

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill*, 474 U.S. at 58. Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id*. In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

The flaw in Petitioner's arguments regarding his counsel's ineffectiveness is that they are directly contrary to his representations at the plea hearing. Under settled Sixth Circuit authority, Petitioner's responses to the trial judge, given under oath at the plea hearing, preclude a subsequent contrary assertion. In *Baker v. United States*, 781 F.2d 85 (6th Cir. 1986), the trial court inquired concerning the terms of any plea bargain, received a response from the prosecutor on the record, and received denials from defense counsel, the prosecutor, and the defendant concerning the existence of any other terms. The Sixth Circuit held that where the trial court has scrupulously followed the required procedure, "the defendant is bound by his statements in response to that court's inquiry." *Baker*, 781 F.2d at 90 (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)). The Sixth Circuit, noting the obvious, observed that a trial judge cannot possibly administer a plea agreement, if it consists of "secret terms known only to the parties." *Id*. at 90. The court again addressed this issue in *Warner v. United States*, 975 F.2d 1207 (6th Cir. 1992), and *United States v. Todaro*, 982 F.2d 1025 (6th Cir. 1993), section 2255 cases. In *Todaro*, the defendant attempted to attack his guilty plea, claiming that his attorney had promised him that he would be sentenced to probation if he pled guilty. The defendant had testified at the plea

colloquy, however, that no other promises had been made to him, other than those stated in the plea agreement. *Todaro*, 982 F.2d at 1026. Consequently, the Sixth Circuit was again faced with a situation in which a defendant's post-conviction allegations were directly contrary to his statements at the plea hearing. Relying on *Baker*, the court reiterated its earlier holding, under which a defendant is bound by his statements in response to the trial court's inquiry, where there has been a careful plea colloquy. In *Warner*, the Sixth Circuit likewise rejected claims of attorney promises in the face of defendant's flat denial of promises at the plea, holding that the petitioner's statements "estopped" him from relying on undisclosed promises. *Warner*, 975 F.2d at 1210. *See also Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999) (concluding that "a claim of ineffective assistance of counsel predicated on allegedly misleading information given by counsel about the terms of a plea agreement can never constitute an 'extraordinary circumstance' under *Baker* when the court conducts a proper, clear, and thorough plea colloquy").

Petitioner's present recollection that he only agreed to enter a plea as to one count of armed robbery—and that counsel was ineffective for failing to object to entry of pleas as to two counts—is belied by the state court record. The December 3, 2014, Status Conference Transcript (ECF No. 8-2) discloses that the prosecutor offered Petitioner the opportunity to enter a plea as to only one count of armed robbery. That was the same deal the prosecutor offered to the other three participants in the robbery.[9] The court informed Petitioner that the offer had to be accepted that day. Petitioner rejected the offer. Six weeks later, at Petitioner's plea hearing, the court reviewed the terms of the plea agreement. Petitioner, under oath, acknowledged that it was his understanding he was entering a plea to two counts of armed robbery, not one. Petitioner is bound by his statement under oath at the hearing

---

[9] See note 4.

If counsel's failings had caused Petitioner any misperceptions regarding the number of counts, the trial court corrected those misperceptions at the plea hearing. *Ramos*, 170 F.3d at 565 ("[T]he state trial court's proper colloquy can be said to have cured any misunderstanding Ramos may have had about the consequences of his plea.") To hold otherwise would "[render] the plea process meaningless . . . ." *Id*. Indeed, "the plea colloquy process exists in part to prevent petitioners . . . from making the precise claim that is today before" the Court. *Id*. Accordingly, even if counsel failed to inform Petitioner regarding the number of counts that were part of the plea agreement, Petitioner has failed to show that he suffered any prejudice as a result.

Petitioner's more general complaint, that counsel failed to inform Petitioner of the ramifications of his plea, is also entirely unsupported by the state court record. The court carefully reviewed the nature of the sentence, informing Petitioner that 16 years was not 0 to 16 years, but a minimum of 16 years. The court also carefully reviewed with Petitioner the rights Petitioner was giving up by entering his plea. To the extent Petitioner's counsel failed to effectively inform Petitioner, or even misinformed him, of these facts—a claim that finds no evidentiary support in the record—the court corrected any possible misperception by its careful plea colloquy. Thus, once again, even if counsel failed Petitioner, no prejudice resulted. The claims that Petitioner is seeking a stay to pursue are plainly meritless. Accordingly, the requested stay will be denied.

## **Certificate of Appealability**

Unless a certificate of appealability is issued, an appeal of the denial of a habeas corpus petition may not be taken. 28 U.S.C. § 2253(c)(1). A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district

court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467.

I have examined each of Petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists would not conclude that this Court's denial of Petitioner's claims is debatable or wrong.

A Judgment and Order consistent with this Opinion will be entered.


Dated:     June 15, 2018            /s/ Robert J. Jonker
                                                   ROBERT J. JONKER
                                                   CHIEF UNITED STATES DISTRICT JUDGE